IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Bethlehem | : | |
| | : | |
| v. | : | No. 1034 C.D. 2017 |
| | : | Submitted: December 22, 2017 |
| Alvin S. Kanofsky, | : | |
| United States of America | : | |
| | : | |
| Appeal of: Alvin S. Kanofsky | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: March 23, 2018

Alvin S. Kanofsky, *pro se*, appeals the June 29, 2017, order of the Court of Common Pleas of Northampton County (trial court) granting an application by the City of Bethlehem, as conservator of property owned by Kanofsky, to sell the property to Collaboration 3, LLC (Developer). Kanofsky contends that the trial court erred in approving the sale because the value of the property was greater than the approved sale price. We affirm.

This case involves the City's continued efforts to address the deteriorated condition of two parcels of property at 30 East Third Street and 32 East Third Street (collectively, the Property) in Bethlehem.[1] Kanofsky is the owner of

---

[1] This effort has been the subject of prior litigation. *See, e.g., City of Bethlehem v. Kanofsky*, 175 A.3d 467 (Pa. Cmwlth. 2017), *reconsideration denied* (Pa. Cmwlth. 2018) (affirming appointment of the City as conservator for the Property); *Commonwealth v. Kanofsky*, (Pa. Cmwlth., No. 1955 C.D. 2016, filed August 14, 2017) (involving a summary criminal charge for a violation of the City's codified ordinances); *Commonwealth v. Kanofsky*, (Pa. Cmwlth., No. 1938 C.D. 2016, filed August 14, 2017) (involving summary criminal charges for violations of City's codified ordinances relating to maintenance of the building and failure to obtain certificate of occupancy);

the Property, which is comprised of a three-story, L-shaped building with a vacant lot inside the L.

In 2016, the City petitioned the trial court to appoint the City as conservator of the Property pursuant to the Abandoned and Blighted Property Conservatorship Act.[2]  On January 13, 2017, the trial court granted the City's petition and appointed the City as conservator.  Kanofsky appealed, and on November 29, 2017, this Court affirmed the trial court.  *See City of Bethlehem,* 175 A.3d at 477.

In April 2017, pursuant to its conservatorship, the City filed a Proposed Final Plan for Abatement of the Property (Abatement Plan) pursuant to Section 6(c)(1) of the Abandoned and Blighted Property Conservatorship Act, 68 P.S. §1106(c)(1).  The Abatement Plan called for the sale of the Property to Developer. At a hearing on May 8, 2017, Developer proposed to purchase the Property for $130,000, which exceeded the $117,000 appraised value of the Property.  Certified Record (C.R.), Item No. 4 at 2, ¶¶6-7.  Developer planned to rehabilitate the Property and create commercial space on the ground level for three tenants as well as a bus concourse.  On the second and third levels of the building, Developer planned residential space for 14 apartments.  On May 12, 2017, following a hearing, the trial court approved the Abatement Plan and directed the City to take all necessary

---

*Commonwealth v. Kanofsky*, (Pa. Cmwlth., Nos. 1523 C.D. 2016, 1524 C.D. 2016, and 1525 C.D. 2016, filed August 11, 2017) (involving four summary criminal charges for violations of the City's codified ordinances); *Kanofsky v. City of Bethlehem,* (Pa. Cmwlth., No. 1503 C.D. 2016, filed May 17, 2017) (quashing appeal of blight certification); *Kanofsky v. City of Bethlehem*, (Pa. Cmwlth., No. 598 C.D. 2016, filed December 6, 2016) (involving a violation of the City's codified ordinances related to maintenance of the building on the Property); *Kanofsky v. City of Bethlehem,* (Pa. Cmwlth., No. 2163 C.D. 2015, filed September 28, 2016) (involving violations of City's codified ordinances relating to maintenance of the building and failure to obtain certificate of occupancy).

[2] Act of November 26, 2008, P.L. 1672, *as amended*, 68 P.S. §§1101-1111.

measures to implement the plan. Trial Court Order, 5/12/2017, at 1. On June 12, 2017, the City filed an application to sell the Property to Developer, and the trial court scheduled a hearing on the sale for June 29, 2017.

At the hearing, counsel for the City, Matthew Deschler, informed the trial court that all interested parties had been served. Deschler requested that settlement occur in 90 days. In opposition to the City's application to sell the Property to Developer, Kanofsky testified as follows:

| | |
|---|---|
| Mr. Kanofsky: | Your honor, as I stated before with the previous appearance in court, I question the appraisal value and the amount that would be available for proceeds, you know, to pay off all the creditors. |
| The Court: | Do you have any counter evidence with regard to value, then? |
| Mr. Kanofsky: | I'm accumulating that at the present time. So I'm in contact with various appraisers. I expect that I could have that, you know, before the proposed date of the settlement. |
| The Court: | Well, today's the date for the hearing, so it would have to have been today. Today is the date to present evidence. |

* * *

| | |
|---|---|
| Mr. Kanofsky: | Well, I would say the only firm figures I have is an appraisal from back in '96 that was made. That's one piece. And, of course, that came out higher than what the people here with Attorney Deschler and his group are claiming. |

* * *

| | |
|---|---|
| The Court: | …This is the amount that I approved with the plan, though, isn't it, Mr. Deschler? |

3

| | |
|---|---|
| Mr. Deschler: | It is. And we have assigned values to each parcel, but in aggregate the purchase price is $130,000, which is significantly more than the combined appraised value of the two parcels, which is only $113,000. |
| The Court: | What is the date of the hearing that I approved the plan? |
| Mr. Deschler: | May 8th, I believe. |
| The Court: | Has an appeal been taken from that order? |
| Mr. Deschler: | Not from that order, judge. |
| The Court: | Okay. So other than that, do you have anything else to present today, then, Mr. Kanofsky? |
| Mr. Kanofsky: | Well, also, as you know, we have the conservatorship appealed. So that's up in the Commonwealth Court. And also, if we appeal the blight. |

Notes of Testimony (N.T.), 6/29/2017, at 5-7; C.R. Item No. 9 at 5-7.

At the conclusion of the hearing, the trial court granted the City's application and authorized the City to convey title to the Property to Developer for $130,000. Trial Court Order, 6/29/2017, at 1; C.R. Item No. 6 at 1. This appeal followed.[3]

On appeal, in the "Questions Asked" and "Further Questions" sections of his brief, Kanofsky raises 26 issues. Most of Kanofsky's issues involve matters that are irrelevant, unsupported by the record, not developed in his brief, or waived

---

[3] This Court's review determines whether the trial court abused its discretion or committed an error of law necessary to the outcome of the case. *City of Bethlehem*, 175 A.3d at 475 n.8 (quoting *In re Conservatorship Proceeding In Rem by Germantown Conservancy, Inc.*, 995 A.2d 451, 459 n.6 (Pa. Cmwlth. 2010)).

4

because they were not raised before the trial court.[4]  Those issues are not properly before this Court and will not be addressed.  The only relevant issue that Kanofsky

[4] Specifically, Kanofsky states: (1) "Was Kanofsky conscientiously maintain [sic] building over the years?"; (2) "Did Kanofsky have a certificate of occupancy?"; (3) "Were there conflicting testimonies in the lower Committee hearings and in the Common Pleas Courts?"; (4) "Were there problems in the service of the Court Reporter, Lori Peck, on orders given to her by Judge Giordano, which delayed delivery of the transcript to Kanofsky?"; (5) Did [Kanofsky]'s neighbor, Mr. John Saraceno, give false, libelous, perjured testimony in lower committee and courts?"; (6) "Should the City of Bethlehem be held responsible for damage to the building?"; (7) "Was the City of Bethlehem conspiring with the neighbor, John Saraceno, the developer, Dennis Benner and other local entities to illegally force Kanofsky to give up possession of the building?"; (8) "Is there a conflict of interest with Judge Giordano handling the case since he is a longtime friend of John Saraceno who has made false, perjured, and libelous statements about Kanofsky in court?"; (9) "Was the bidding on the Abatement Project not open?"; (10) "Is the City really conservator and developer combined?"; (11) "Was the building roof not sealed due to limited funds provided from the state?"; (12) "Did consequent Roof leakage cause more damage to the building?"; (13) "Did Certified Appraisers [] testify in court?"; (14) "Were the supposed appraisals extremely low, thus short-changing the Creditors?"; (15) "Do outside appraisers all say that the appraisal amounts would be easily [be] double or triple do to the massive development of the parking garage and the Lehigh and St. Luke's development offices 200 feet away from the building?"; (16) "Is everything under appeal – the so called blighted building and the so called blighted lot?"; (17) "Is the conservatorship under appeal as well?"; (18) "Was illegal entry used by the [C]ity when[] Mr. Tony Hanna, Head of the Redevelopment Authority forced open the door to the building in July?"; (19) "Earlier, did the [C]ity cause major damage to the building with their [sic] massive front Loader hitting the building wall after the 2016 January 22 record breaking 32 inch snowfall, while trespassing on [Kanofsky]'s lot, causing collapse of the roof, breakage to the stucco siding, and a crack in the front window?"; (20) "Does the recent court appearance on July 17 with case CV-2016-3486 before Judge Samuel Murray concerning the cracked front window caused by the front loader further support the city causing major damage to the building?"; (21) "Was it shorting [sic] after the snowfall that the [C]ity began to issue violations and citations on the cracked front window, and the case finally before [J]udge Murray, despite numerous attempts by the [C]ity to delay a trial hearing through continuances, and even ignoring the initial hearing and appeal on it."; (22) "Are the numerous citations and consequent convictions and fines for lack of a certificate of occupancy and roof repair invalid?"; (23) "Had the [C]ity earlier allowed [Kanofsky] occupancy for his personal items, as can be easily confirmed?"; (24) "Was the roof repair the responsibility of the [C]ity which caused major damage to the roof, due to the front loader hitting the wall of the building?"; (25) "Did the court notify [Kanofsky] of the Hearing before Judge Giordano when the Building was declared blighted?"; and (26) "Does Hon. Judge Beltrami have a conflict of interest with being lifelong friend of John Conahan (at U.S. Post Office Main branch) as verified by high school yearbook[?]"  Kanofsky's Brief at 3-5.

has preserved for appeal relates to the sale price of the Property. Specifically, Kanofsky contends that the value of the Property is greater than the sale price approved by the trial court. In response, the City states that Kanofsky has never presented an appraisal or demonstrated why the appraisal obtained by the City was incorrect. The City contends that the trial court did not err or abuse its discretion when it authorized the sale of the Property to Developer.

Section 9(b) of the Abandoned and Blighted Property Conservatorship Act sets forth the prerequisites for the sale of property under conservatorship. It states:

> Upon application of the conservator, the court may order the sale of the property if the court finds that:
>
> (1)  Notice and opportunity to provide comment to the court was given to each record owner of the property and each lienholder.
>
> (2)  The conservator has been in control of the building for more than three months and the owner has not successfully petitioned to terminate the conservatorship under section 10[, 68 P.S. §1110].
>
> (3)  The terms and conditions of the sale are acceptable to the court, and the buyer has a reasonable likelihood of maintaining the property.

68 P.S. §1109(b).

Beginning with the notice requirement in subsection (1), the City filed certificates of service showing that it served Kanofsky and each lienholder with copies of the trial court's May 12, 2017, order, which set the date and time of the hearing, and the City's application to sell the Property to Developer. Kanofsky had the opportunity to present evidence in opposition to the City's application at the trial court's hearing on June 29, 2017. Finally, Kanofsky has not disputed service of the

6

notice of the hearing or the application. The record shows that the first prerequisite in Section 9(b) of the Abandoned and Blighted Property Conservatorship Act was satisfied.

The second prerequisite of Section 9(b) required the conservator to have been in control of the building for over three months. The trial court appointed the City as conservator of the Property on January 13, 2017. The City remained in control of the Property as conservator for more than three months when, in May 2016, it petitioned the trial court for approval of the Abatement Plan for the Property. At no point did Kanofsky petition to terminate the conservatorship, and he does not contend otherwise. Accordingly, the record shows that the second prerequisite was satisfied.

The third and final prerequisite of Section 9(b) requires that the terms and conditions of the sale be acceptable to the court and that the buyer have a reasonable likelihood of maintaining the property. Prior to submitting its Abatement Plan, the City's Department of Community and Economic Development published a request for proposals from developers interested in rehabilitating and improving the Property. The City received a number of proposals and selected Developer's proposal after determining that it was "best suited to rehabilitate the [Property] so as to secure [its] structural integrity and satisfy and advance the economic, cultural, and social needs and benefits of the … community." C.R. Item No. 1 at 2, ¶8. When the City filed the Abatement Plan, it included a copy of Developer's final development plan. That final plan included: a description of the work that Developer proposed to undertake to rehabilitate the building, including remediating the existing building violations; a plan to renovate the interior of the building, including the creation of both commercial and residential space; the construction

7

costs and timelines; a background on Developer's firms; and Developer's financial capacity to execute the project, including letters from three financial institutions agreeing to provide financing for the project. C.R. Item No. 1, Exhibit A. Given the appraised value of the Property established in the records and the details of Developer's plan to rehabilitate the Property, the record shows that the third prerequisite was satisfied.

In summary, we conclude that the trial court did not err in holding that the requirements in Section 9(b) of the Abandoned and Blighted Property Conservatorship Act were satisfied. Accordingly, we hold that the trial court did not abuse its discretion or err in granting the City's application to sell the Property to Developer.[5]

For these reasons, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge

---

[5] Kanofsky also argues that the trial court erred in approving the sale because the value of the Property was higher than the sale price. Kanofsky did not present any evidence to support his argument, so we need not consider it further.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Bethlehem | : | |
| | : | |
| v. | : | No. 1034 C.D. 2017 |
| | : | |
| Alvin S. Kanofsky, | : | |
| United States of America | : | |
| | : | |
| Appeal of:  Alvin S. Kanofsky | : | |

# **O R D E R**

AND NOW, this 23rd day of March, 2018, the June 29, 2017, order of the Court of Common Pleas of Northampton County in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge